[No. B103333. Second Dist., Div. Seven. Dec. 23, 1996.]

LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
SHAWN B., Real Party in Interest.

1258

**COUNSEL**

De Witt W. Clinton, County Counsel, Larry Cory, Assistant County Counsel, Lois Timnick, Howard Haffner and Victor Greenberg, Deputy County

Counsel, Jones, Day, Reavis & Pogue, Elwood Lui, Laura A. Matz and Karen Thorland for Petitioner.

William C. Katzenstein, County Counsel (Riverside), Robert M. Pepper, Principal Deputy County Counsel, and Kathleen L. Burgess, County Counsel (Del Norte), as Amici Curiae on behalf of Petitioner.

Richard Amerian and Michelle L. Stern for Respondent.

Randall Pacheco and Sonia Villanueva for Real Party in Interest.

Jo Kaplan, Richard G. Novak, Robert Stevenson and Steven Shenfeld as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**JOHNSON, J.**—In this writ proceeding we are asked to order the Los Angeles Dependency Court to appoint lawyers from the Los Angeles County Counsel's office to represent all children involved in dependency proceedings except in instances of "actual conflict of interest" between the county and the child. We conclude under existing statutory law the decision whether to appoint the county counsel to provide "dual representation" to both the county and to the child in the same case rather than appointing an "independent counsel" for the child is a matter within the court's discretion. We further conclude the Los Angeles Dependency Court did not abuse its discretion in issuing a policy (now a local rule) formalizing the ongoing practice of appointing independent counsel for children in nearly all proceedings before that court. Accordingly, we discharge the alternative writ and deny the petition for writ of mandate and prohibition.

### FACTS AND PROCEEDINGS BELOW

In mid-June 1996 Shawn B.'s mother abandoned her four-year-old at the home of a seventy-nine-year-old woman. A friend of the elderly woman stopped by and asked about the child. The woman did not even know the mother's last name and it was apparent she would be unable to care for the child. So the friend took Shawn to her own home and called a child abuse hot line.

Later that day Shawn was placed in foster care. The boy cannot walk, probably the result of spina bifida. At the same time, however, he is verbal and intelligent. He advised the social worker, "My mommie just left me at

the lady's house. She went that way and then that way. I don't know when she is coming back or if she is. I'm going to tell the lady at my new house that I want a wheelchair and a backpack." He also attributes his inability to walk to an "itty-bitty spine, my cousin hit me."

A little over a week later the Los Angeles County Department of Children and Family Services (DCFS) filed a petition under Welfare and Institutions Code section 300, subdivisions (c), (e) and (g). The petition alleged Shawn B.'s mother left him with an infirm caretaker, that the mother's and father's whereabouts are unknown and neither parent has provided the child with the necessities of life. Shortly after filing the petition DCFS apparently heard the mother was then incarcerated at Sybil Brand Institute for Women and added that allegation. Later the agency determined she was not at Sybil Brand. The DCFS has been unable to identify or locate the father.

At the detention hearing held on June 25, 1996, little Shawn became the vehicle for a broader issue—who is to represent children, like Shawn B., in proceedings before the dependency court. DCFS's lawyer filed a written certification stating no "actual conflict" existed between the DCFS and Shawn B. and requesting that he be appointed as the minor's counsel as well as the county's counsel in this case. The trial court denied the county counsel's request, a decision which also was consistent with a May 9, 1996, juvenile court policy requiring appointment of an independent counsel for all minors determined to need representation. The trial court instead chose one of the contract law offices specializing in the representation of parents and children before the dependency court, the Dependency Court Legal Services (DCLS) Law Office of Randall Pacheco.

Two days later, June 27, the county filed its petition for writ of mandate, prohibition or other appropriate relief with this court. We granted an alternative writ on July 25, 1996. In its petition the DCFS requests this court to set aside the trial court's denial of the county counsel's motion requesting it be appointed to represent Shawn B. The petition also asks us to rule invalid the May 9, 1996, policy and furthermore to restrain the dependency court from enforcing its long standing de facto policy of refusing to appoint county counsel to represent minors in most cases where it determines the child would benefit from the assistance of counsel. Within a few months this court received applications for amicus curiae briefs from nearly a dozen individuals and institutions. We granted two applications on each side of the issue and rejected the rest in order to expedite consideration of this writ petition.

The issue that prompted this writ petition has been percolating since at least 1989 within the dependency court system. At that time county counsel

was appointed to provide "dual representation" to both the DCFS and the children caught up in dependency proceedings in over 85 percent of cases. Beginning in 1989, however, the juvenile court bench began appointing "independent counsel" for minors in more and more cases. By 1995 the downward trend of county counsel appointments had reached the point that office was appointed in a minuscule 2 percent of cases.

But the true impetus for this writ petition can be traced to an October 17, 1995, meeting of the Los Angeles County Board of Supervisors. Once again facing a fiscal crisis unrelated to the operation of the dependency court or the court system in general, the board considered a motion proposing "dual representation" of children in dependency proceedings as a cost savings to help balance the county's budget. Juvenile Court Presiding Judge Richard Montes and Dependency Court Supervising Judge Michael Nash both testified at this hearing. Both judges expressed the opinion "there is an inherent conflict" between the county counsel representing the DCFS and the child in "every single case." The two judges responsible for administration of the dependency court invited county counsel to file a writ petition because "it's going to take an appellate court to tell us what the resolution of this conflict is."

Two weeks later, on October 31, 1995, the Los Angeles County Board of Supervisors instructed the county counsel to file a writ petition in an "appropriate case" to test the dependency court's policy in favor of appointing "independent counsel" rather than allowing "dual representation" for minors in proceedings before that court. Eight months later, four-year-old Shawn B.'s mother abandoned him and his became that "appropriate case."

## DISCUSSION

Petitioner frames the issue as whether dependency court judges *must* appoint county counsel to represent children in their courts unless they find an *actual* conflict between the interests of the DCFS and the child in each specific case. Petitioner further contends the dependency court's six-year practice and recent policy and the even more recent local court rule are based erroneously on a judicial finding of an *inherent* conflict between county counsel and minors in dependency proceedings. For reasons explained below, we disagree with this formulation of the issue. Properly construed, the governing statutory framework allows the dependency court to appoint *independent* counsel in *any* case but it expressly *prohibits* the court from sanctioning *dual* representation in cases where there is conflict between the county counsel and the child. Since courts are free to adopt local

policies and any court rules which are not inconsistent with state law, we conclude the Los Angeles Dependency Court's past practices and current policies and new rule are valid. We thus deny the writ.

I.   *Welfare and Institution's Code Section 317 Allows the Trial Court to Appoint Independent Counsel, Including a Private Lawyer, to Represent Children in Any Dependency Case Irrespective of Whether There Is a Conflict of Interest Between County Counsel and That Child.*

We begin with the language of Welfare and Institutions Code section 317, subdivision (c) which reads in its entirety as follows: "(c) In any case in which it appears to the court that the minor would benefit from the appointment of counsel the court *shall* appoint counsel for the minor as provided in this section. Counsel for the minor *may* be a county counsel, district attorney, public defender, or other member of the bar, provided that the counsel does not represent another party or county agency whose interests conflict with the minor's. The fact that the district attorney represents the minor in a proceeding pursuant to Section 300 as well as conducts a criminal investigation or files a criminal complaint or information arising from the same or reasonably related set of facts as the proceeding pursuant to Section 300 is not in and of itself a conflict of interest. The court *shall* determine if representation of both the petitioning agency and the minor constitutes a conflict of interest. If the court finds there is a conflict of interest, separate counsel *shall* be appointed for the minor. The court may fix the compensation to be paid by the county for the services of appointed counsel, if counsel is. not a county counsel, district attorney, public defender *or other public attorney*." (Welf. & Inst. Code, § 317, subd. (c), italics added.)[1]

To analyze this statute properly it is important to distinguish between the mandatory and discretionary portions of the statute. That is, it is important to distinguish between the "shall's" and the "may's."

The first sentence of section 317, subdivision (c) is mandatory. It states: "the court *shall* appoint counsel for the minor as provided in this section" in any case where the "minor would benefit" from such appointment. But the second sentence is the critical one and it speaks in the language of discretion. That sentence states that in appointing the required counsel such counsel "*may* be a county counsel, district attorney, a public defender, or

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

*other member of the bar.*" The only limitation on the trial court's discretion in making that appointment is that the court ensure this "counsel does not represent another party or county agency whose interests conflict with the minor's."

The remaining sentences of section 317, subdivision (c) define the circumstances in which the trial court is *prohibited* from appointing a district attorney or county counsel or public defender instead of "other member[s] of the bar." This section first points out the district attorney shall not be considered in a conflict position and therefore barred from being considered to represent the child merely because that office filed a criminal proceeding out of which the dependency action may have grown. It then moves on to consider the possibility of appointment of other government counsel to represent the child. Section 317, subdivision (c) instructs the court it *"shall* determine if representation of both the petitioning agency and the minor constitutes a conflict of interest." If such a conflict exists the court is instructed "separate counsel *shall* be appointed for the minor."

Nothing in the language of section 317, subdivision (c) suggests the trial court *must* appoint the county counsel to represent the child in every case where the court finds the absence of a conflict of interest between the county counsel and the child. Rather the clear import of the language is that the trial court in exercising its discretion to appoint among a variety of potential sources of legal counsel is *barred* from appointing the county counsel where a conflict does exist.

Petitioner relies principally on *In re Richard H.* (1991) 234 Cal.App.3d 1351 [285 Cal.Rptr. 917], an earlier decision of this court, to support its interpretation section 317 *requires* the trial court to appoint county counsel as the child's lawyer unless a conflict exists. In that case, this court did not reverse an appointment of a private counsel but instead upheld the trial court's discretionary decision to appoint county counsel rather than private counsel to represent the children in a dependency proceeding. After allowing the county counsel to represent the children as well as DCFS, the trial court had declared the two infant sons dependents of the court. The father appealed that order, arguing the court should have appointed other counsel for his children because the county had opposed family reunification. This court affirmed the trial court, holding "[A]n actual conflict of interest must exist before the court is *required* to appoint separate counsel for a minor jointly represented by county counsel." (234 Cal.App.3d at p. 1368, italics added.)

*In re Richard H.* is clearly distinguishable and provides no support for petitioner's construction of section 317. It did not involve a situation where

the appellate court reversed an appointment of private counsel after finding no conflict had been shown to exist between county counsel and the child. Rather it involved a situation where the trial court had exercised its discretion to appoint county counsel as the child's lawyer. All this court did in *In re Richard H., supra*, was to approve the trial court's discretionary decision to appoint county counsel because we found no conflict existed. The fact we held the absence of a conflict of interest meant the trial court was not *required* to appoint separate counsel in no way suggests it would have been error for the trial court to have exercised its discretion in another direction and appointed separate counsel in that case—or any other. Accordingly, we are entirely consistent with *In re Richard H., supra*, in ruling, as we do today, that section 317, subdivision (c) allows trial judges the discretion to appoint private counsel to represent children in dependency proceedings despite the absence of any conflict between the child and county counsel or county counsel's other client.

II. *The Dependency Court Practice, Policies and Now Local Rule, Favoring Appointment of Independent Counsel for Children, Are Not Inconsistent With State Law or an Abuse of the Policymaking Discretion of the Superior Court.*

On July 1, 1996, while the petition of DCFS was pending in this court local rule 17.16 of the Juvenile Dependency Division of the Superior Court for the County of Los Angeles became effective. This rule is headed "Legal Representation" and subsection (b) is titled "Appointment of Counsel for Children."

That subsection reads in pertinent part as follows:

"(1) Benefit to Child. The importance of the attorney's role in protecting and promoting a child's interest in dependency proceedings requires the court to conduct an inquiry in each case, pursuant to Welfare and Institutions Code section 317, to determine whether the child would benefit from the appointment of counsel.

"Welfare and Institutions Code section 317 requires the individual judicial officer to ensure that each child is represented by counsel when the child would benefit from the appointment of counsel. Such appointment shall be made as soon in the dependency case as it is determined the child would benefit from such counsel.

"(2) Procedures.

"a) At the arraignment and detention hearing, the court shall first determine whether a child would benefit from the appointment of counsel. A

child four years of age or older, or a child of any age with special needs, or a child who is in an out-of-home placement with a non-relative caretaker, will generally benefit from the appointment of counsel. If the court determines that the representation would benefit a child, the court shall appoint counsel as follows:

"i) All appointments for counsel for children shall be referred to Dependency Court Legal Services (DCLS).

"ii) In the event that no DCLS attorney is available to represent a child, an attorney from the Welfare and Institutions Code section 317 attorney panel shall be appointed to represent the child.

"iii) County Counsel/Auxiliary Legal Services (ALS) attorneys shall not be appointed to represent any child in a new or ongoing dependency proceeding. County Counsel/ALS attorneys shall continue to represent all their existing minor clients until they have been properly relieved by the Court." (Super. Ct. L.A. County, Juvenile Div. Dependency Proceedings, rule 17.16(b) [Court Rules Service (Daily J. Corp.)] (Dependency Local Rule).)

Later subsections of Dependency Local Rule No. 17.16(b) provide for the relief of county counsel currently representing minors where the court finds "an actual conflict of interest has developed and presently exists between the child and DCLS." (Dependency Local Rule No. 17.16(b)(4).) The rule further provides for recusal of county counsel from representing DCFS in cases of conflict unless the minor's newly appointed independent counsel, and the minor, if he or she is 14 or older, consent in writing or on the record to the county counsel's continued representation in DCFS. (Dependency Local Rule No. 17.16(b)(5).)

Dependency Local Rule No. 17.16 also contains a list of 19 "Duties of Counsel for Children." (Dependency Local Rule No. 17.16(c).) The rule further sets forth the procedure for registering and handling complaints about court appointed attorneys. (Dependency Local Rule No. 17.16(d).) It also sets forth eligibility requirements and education and training minimums to become eligible for appointment as counsel in dependency proceedings. (Dependency Local Rule No. 17.16(e).)

The entirety of Dependency Local Rule No. 17.16 evidences the dependency court's comprehensive attempt to upgrade the quality and independence of representation afforded minors in dependency proceedings. It follows the Legislature's enactment of section 317.5 formally recognizing

the child's status as a full-fledged "party" in those proceedings[2] But it is the portion of this rule quoted above which is challenged in this writ. That subsection of the rule, in turn, elevates to the status of a formal "rule" the same guiding principles announced in a juvenile court's May 9, 1996, "policy" which, in turn, was consistent with a practice that had evolved among dependency court judges over the past half-dozen years—the practice of preferring to appoint independent counsel rather than allowing dual representation of minors by county counsel.

This petition does not test the *enforceability* of the May 9, 1996, policy or Dependency Local Rule No. 17.16. That must await an appeal or writ petition from the decision of a trial court judge to appoint county counsel to represent a child despite, and contrary to, the rule's provisions. Here the trial judge, either exercising his personal discretion or in agreement with the May 9, 1996, "policy" now incorporated in Dependency Local Rule No. 17.16, decided consistently with that policy to appoint DCLS counsel rather than county counsel to represent Shawn B. Furthermore, in justifying this order the trial judge clearly expressed his personal agreement with the policy of appointing DCLS lawyers rather than county counsel to represent minors.

Accordingly, in one sense, the validity of Dependency Local Rule No. 17.16 (and its antecedent court "policy") could be viewed as irrelevant to the disposition of this writ petition. That is because the court order appointing DCLS rather than county counsel to represent the child appears consistent with the individual trial judge's own personal preferences and discretion independent of the existence of an overall court policy or rule purporting to require appointment of a lawyer other than county counsel to represent the child. For reasons discussed in part I, *ante*, the trial judge's exercise of his personal discretion was clearly appropriate under section 317. Thus, issuance of the writ DCFS requests would not be justified even if this court concluded the May 9, 1996, policy (and subsequent Dependency Local Rule No. 17.16) were invalid. Nonetheless, we move ahead to consider the validity of the May 9, 1996, policy, Dependency Local Rule No. 17.16 and the antecedent general practice of appointing independent counsel rather than county counsel to represent children in dependency proceedings. On the basis of that inquiry and for reasons explained below, we uphold the practice, policy and rule and this holding provides the primary, independent and sufficient grounds for our decision in this case.

---

[2]Section 317.5 provides the following:

"(a) All parties who are represented by counsel at dependency proceedings shall be entitled to competent counsel.

"(b) Each minor who is the subject of a dependency proceeding is a party to that proceeding."

### A. The Court Had the Power to Promulgate This Policy and Rule Because They Were Consistent With Section 317.

Local court rules and policies are valid unless they are inconsistent with state legislation or statewide court rules. (Gov. Code, § 68070; Cal. Rules of Court, rule 981; *Wisniewski* v. *Clary* (1975) 46 Cal.App.3d 499 [120 Cal.Rptr. 176] [upholding local courts' authority to issue a "policy" as well as local rule]; 2 Witkin, Cal. Procedure (4th ed. 1996) Courts, §§ 201-208, pp. 268-278 and cases cited therein.) We conclude the court's May 9, 1996, policy (and subsequent Dependency Local Rule No. 17.16) are not inconsistent with state legislation or court rule and thus are valid.

Petitioner does not cite any statewide court rule or code provision these local court practices and policies purportedly violate other than section 317 and thus our attention is directed to that provision. An example of a local court rule inconsistent with section 317 would be one which purported to require, or even permit, appointment of county counsel to represent the child despite a finding that a conflict of interest existed between the child and DCFS. This Dependency Local Rule No. 17.16, and its antecedent practices and policies, obviously does not do so. As explained above, section 317 subdivision (c) gives the court unfettered discretion to choose among four possible sources of representation for minors—"county counsel, district attorney, public defender, or other member of the bar." The only limit on that discretion is the prohibition against appointment of counsel who has a conflict of interest with the child to be represented. We hold that consistent with this statutory provision, a local court can adopt a uniform policy or rule which chooses one of those four eligible categories as the one to supply representation for all or most children appearing in dependency proceedings before that court.

Unlike many other statutes granting discretion to the courts, section 317 does not set forth specific criteria, then require the trial judge to apply those criteria and choose among the four possible sources of counsel when selecting counsel for a particular case. According to section 317, the trial court must make only two individualized decisions regarding the appointment of counsel: first, whether the child would benefit from the assistance of counsel, and second, whether the presence of a conflict *bars* appointment of one or more possible sources of legal representation.[3] Other than that, the counsel to be appointed may be from any of the four sources and indeed may be the one source the court as a whole has determined is to be appointed as

---

[3]Obviously, in many cases there will be a third individualized decision—the choice of a specific lawyer to represent the child. That is, once the category of lawyer is designated,

a matter of course in all or most cases. Nothing in section 317 suggests it compels the trial judge to entertain the possibility of appointing from all four sources and make a selection among them in each individual case. Accordingly, the dependency court was not acting inconsistently with section 317 when it adopted formal policies embodying a general practice which selected one of the four permitted sources as the one that individual trial courts are to appoint in all or nearly all dependency cases.

B. *The Policy and Rule Were a Reasonable as Well as Permissible Exercise of the Court's Local Rulemaking Power.*

We are unprepared to hold the May 9, 1996, policy (and subsequent Dependency Local Rule No. 17.16) embodies the only general practice a court could adopt and still be consistent with section 317. But we are prepared to conclude there is ample support for the reasonableness of the policy the dependency court chose to adopt in its May 9, 1996, policy and as now incorporated in this new court rule. That support is found in the combined experiences of judicial officers who have served in the Los Angeles Dependency Court, the similar policies adopted by most large counties in California and many jurisdictions elsewhere in the United States, the recommendations of a 1992 grand jury investigation of the dependency court and a nearly universal consensus among national experts that children should be represented by lawyers who do not have the county for a client.

In its report filed June 1, 1992, the Los Angeles County Grand Jury summarized its interviews with respected Los Angeles Dependency Court judicial officers as follows:

"a) Decades of experience strongly suggest that dual representation operates to the detriment of thousands of children. Independent counsel is more responsive to the child's needs and less costly in the final analysis.

"b) Despite current law allowing it, dual representation creates a potential conflict which, when combined with the poor performance of the Department of Children Services over the years, will not result in the child's best interests being served." (Los Angeles County Grand Jury, Rep. of Juvenile Services Com. (June 1, 1992) p. 17.)

An appendix to the grand jury report contains quotations from testimony of several Los Angeles County judicial officers on this question. Judge Paul

---

either through individualized decision or court-wide policy or rule, the trial court itself may name a particular lawyer from within that category to serve the child in the particular case.

Boland, then immediate past Presiding Judge of the Juvenile Court, stated "Decades of experience strongly suggest that the failure to appoint separate counsel operates to the detriment of thousands of abused and neglected children who enter the Los Angeles County juvenile court system annually. . . . In other Counties where appointment of separate counsel for children's needs are heard, children receive increased services, and remain in the juvenile justice system for shorter periods of time. The appointment of separate counsel for children in this County would produce a system which is more responsive, less costly and more humane." (Los Angeles County Grand Jury, Rep. of Juvenile Services Com. (June 1, 1992) appen., reference no. 15.)

Judge Michael Nash, then a dependency court judge and now Supervising Judge of the Dependency Court, testified "County Counsel's dual representation creates a problem because the same attorney is representing the provider of services (e.g., the Department of Children's Services) and the recipient or the beneficiary of the services. These services are the subject of judicial review both qualitatively and quantitatively at virtually every stage of the legal proceedings." (Los Angeles County Grand Jury, Rep. of Juvenile Services Com., *supra*, appen., reference no. 15.)

Commissioner Bradley Stoutt, a veteran dependency court commissioner, explained, "This potential conflict, when juxtaposed with the poor performance by DCS of its duties in the countless cases I have seen over 10 years as a Commissioner assigned to Dependency Court, has led me to conclude that counsel for DCS should not also represent the minor. . . ." (Los Angeles County Grand Jury, Rep. of Juvenile Services Com., *supra*, appen., reference no. 15.)

Court Commissioner Joan Carney added, "The Department of Children's Services works on a limited budget and cannot always provide necessary services. In order to properly represent children, minor's counsel needs to be a gadfly constantly pressing for better services." (Los Angeles County Grand Jury, Rep. of Juvenile Services Com., *supra*, appen., reference no. 15.)

And finally, Commissioner Jewell Jones who spent over a decade as a dependency court commissioner stated, "I became increasingly concerned over the practice of dual representation in the early 1980's after I was assigned to the Dependency Court. In about 1985 I began appointing counsel for all children, although I am sure that there were a few cases where I left the representation by County Counsel intact. . . . [¶] When the County Counsel represents children and the department, they defer to the department

and NEVER make an independent investigation of the circumstances. I know of no County Counsel on any case over which I have presided who has even gone out to talk to the child before they are to appear in court. It has even been my experience that County Counsel never sees the child except in court and sometimes are unaware that they represent the child. . . ." ((Los Angeles County Grand Jury, Rep. of Juvenile Services Com., *supra*, appen., reference no. 15.)

From these representative comments it is apparent the May 9, 1996, policy and subsequent Dependency Local Rule No. 17.16 reflect the accumulated experience of past and present judges (and commissioners) who have appointed counsel and observed their performance in literally tens of thousands of cases in that court.

Most other large California counties also have adopted a general policy of appointing independent counsel rather than allowing dual representation of children in dependency cases. A spring 1993 survey by the Children's Advocacy Institute reported that "Half of the responding counties appoint counsel separate from either the parents or county in 90-100% of the cases." Children's Advocacy Institute (Do Children Get Competent Counsel? A 58-County Survey of Standards for Attorneys Representing Children in Juvenile Court (May 1994) p. 3.) All three of the other counties in the Second Appellate District—Ventura, Santa Barbara and San Luis Obispo— are reported as providing separate counsel either through the public defender, the district attorney or private attorneys. None of the three use dual representation by the county counsel's office to represent children in dependency court. The same is true with most of the state's larger counties, including San Francisco, San Diego, Sacramento, Orange, Riverside, San Bernardino, Solano and Santa Clara. Indeed Los Angeles was one of only seven counties reporting any use of their county counsel's office to represent children in dependency proceedings. (*Id.*, appen. B.)

Los Angeles Dependency Court's policy favoring appointment of lawyers other than county counsel to represent minors in dependency proceedings finds further support by the great weight of expert opinion. These views are summed up by Professor Don Duqette, Director of the Child Advocacy Clinic at the University of Michigan School of Law since 1976. "There is an inherent conflict in having the same legal representative for the government social agency and the child. The government is supposedly acting in the child's best interest, but the definition of that interest can vary considerably. First of all, the government has an interest in establishing the legal grounds for the court action. Because of the importance of this responsibility they are

often distracted from determining how the court process itself will affect the individual needs of the child. Secondly, the government has an interest in spreading scarce resources over a large number of children and they may choose not to provide a particular service to a child in the interest of economy. The independent child advocate will pursue the needs and interests of the child without having to make compromises inherent in running a large government organization with limited funds. For example, it may be in the interest of a nine month child to visit its mother on a daily basis. However, the agency is not going to advocate for that interest because they do not have the staff or funds. Thirdly, one of the roles of the advocate is to monitor the performance of the agency. Case plans are developed in the course of the hearings. Unfortunately, they are not always implemented. A good child advocate will monitor the child between court hearings to ensure that these case plans are implemented properly." (Los Angeles County Grand Jury, Rep. of Juvenile Services Com., *supra*, appen., reference no. 13.)

In a similar vein, Donald C. Bross, associate director of the Kempe National Center for the Prevention and Treatment of Child Abuse and Neglect, and an associate professor of pediatrics at the University of Colorado School of Medicine, states, "An examination of the American Bar Association's self assessment protocols of the role of county attorney in comparison to available materials on the role of the representative of the child in abuse and neglect matters, proves that these two roles cannot satisfactorily be done by the same individual or even the same office. When the county itself is part of the child's problem because of its employees, policies or allocation of resources, the inherent conflict of interest becomes manifest. No attorney can serve two masters ethically or practically in the same case." (Los Angeles County Grand Jury, Rep. of Juvenile Services Com., *supra*, appen., reference no. 15.)

The American Bar Association's standards also require independent counsel rather than dual representation of children in dependency proceedings. The American Bar Association's House of Delegates recently adopted the Standards of Practice for Lawyers Who Represent Children in Abuse and Neglect Cases. The standard regarding assuring the independence of the child's attorney starts out with the declaration: "The child's attorney should be independent from the court, the court's services, the parties and the state." The rationale for this standard is explained in a comment to the rule "[t]o help assure that the child's attorney is not compromised in his or her independent action, these Standards propose that the child's lawyer be independent from other participants in the litigation. 'Independence' does not mean that a lawyer may not receive payment from a court, a government

entity (e.g., program funding from social services or justice agencies), . . . The concept of independence includes being free from prejudice and other limitations to uncompromised representation." (ABA Standards of Practice for Lawyers Who Represent Children in Abuse and Neglect Cases (Approved Draft 1996) std. G-1.) Significantly, this standard appears within the section of the American Bar Association's standards of practice titled "The Court's Role in Structuring Child Representation," which calls upon the courts to take affirmative steps to ensure the independence and quality of legal representation for children in dependency proceedings.

A recent national conference broadly representative of national experts involved in this field reached a similar conclusion. This conference was held at Fordham University School of Law in 1994 and was sponsored by, among others, the United States Department of Health and Human Services, the National Association of Counsel for Children, and the National Council of Juvenile and Family Law Judges. Conference participants produced a series of consensus recommendations which begin with the declaration, "A lawyer appointed or retained to serve a child in a legal proceeding should serve as the child's lawyer." (*Recommendations of the Conference on Ethical Issues in the Legal Representation of Children* (1996) 64 Fordham L.Rev. 1301.) Later in the conference document the conferees recommend "A lawyer should not undertake representation of a child and a government agency in the same matter. For example, a lawyer representing an agency prosecuting a child protection petition or seeking to terminate parental rights should not also represent the child in that proceeding." (*Id.* at p. 1319.)

Two recent local studies have focused on the question of providing representation to children in dependency proceedings in Los Angeles courts. The first was conducted by the 1991-1992 Los Angeles County Grand Jury. That body specifically addressed the issue of "dual representation" by the county counsel's staff. As its first recommendation in that section of the report, the grand jury announced, "It is recommended that the present practice of dual representation be phased out and the policy revert to that of the 'Boland Memo' of July 2, 1990, where County Counsel is prohibited from taking a child's case if there is a potential for conflict." (Los Angeles County Grand Jury, Rep. of Juvenile Services Com., *supra*, at p. 18.) As its third recommendation in that section the grand jury advised, "Consideration should be given to expanding one of the DCLS offices to handle children exclusively for cases where potential or actual conflict exists." (*Id.* at p. 19.)

The 1991-1992 Los Angeles County Grand Jury justified these recommendations in the following "comment:" "We could find no other jurisdiction

that operates the way Los Angeles County does. *1 out of every 3 children that now go through the Dependency Court for abuse and neglect eventually wind up in the Delinquency Court on a criminal matter.* Undoubtedly many of those in state prisons also have histories of abuse and neglect in their backgrounds. The children of today deserve the best chance to resolve their abuse and neglect problems. Dual representation in its present form does not appear to be the answer." (Los Angeles County Grand Jury, Rep. of Juvenile Services Com., *supra*, at p. 19, original italics.)

Three years later another broad-based citizen commission convened. This one was called, "Task Force on the Representation of Children in Dependency Court" and was established by the Los Angeles County Commission for Children and Families. The task force included representatives from the DCFS, the Children's Court, the Commission for Children and Families, the Alliance for Children's Rights and the Juvenile Dependency Bar. The commission examined the then current situation in which it found new children's cases were being assigned as follows: 47 percent to DCLS attorneys, 46 percent to panel attorneys and 7 percent to county counsel. The commission recommended that all representation be provided through DCLS.

On the basis of its task force recommendation the commission on December 7, 1994, requested board approval "of the restructuring and expansion of the contract with the existing Dependency Court Legal Services (DCLS) to be the legal entity which represents children in the dependency court to improve the quality of legal representation of children; this will require allocation of additional resources to DCLS." (Letter to Los Angeles County Board of Supervisors from Los Angeles County Com. for Children and Families (Dec. 7, 1994) p. 1.) When called to testify before the Los Angeles Board of Supervisors on October 17, 1995, the chair of the Commission for Children and Families testified that "There are hundreds of practical reasons why dual representation should not exist. . . ." (Partial transcript, proceedings before Los Angeles County Board of Supervisors, Agenda Item No. 13: Dependency Court (Oct. 17, 1995) p. 38.) This was followed by testimony from the chair of the task force that DCLS and not county counsel should represent the children in dependency cases. (*Id.* at pp. 40-42.)

The convergence of outside opinion confirms the Los Angeles dependency court's own combined experience in support of the importance of independent counsel for children involved in dependency proceedings. Real party argues the case for this proposition is so one-sided this court should declare

the county counsel is in an *inherent* conflict position with respect to every child in every dependency case and thus should be barred as a matter of law under section 317 from representing any child in any such case.

In effect, real party asks this court to elevate the essence of the May 9, 1996, policy and Dependency Local Rule No. 17.16 to the status of a statutory requirement mandated by section 317. We find it unnecessary to consider this issue in order to resolve the present writ, and thus decline to do so. At the same time we do find the Los Angeles Dependency Court's own accumulated experience—especially as supported by the practices, studies, expert opinion and the other evidence surveyed above—more than ample to support the court's discretionary decision to adopt Dependency Local Rule No. 17.16.

Petitioner argues "the increased cost of [using independent counsel rather than dual representation] was not warranted given the speculative and minimal benefit." Petitioner cites two cases in which courts held it inappropriate to disqualify the public legal office assigned to represent two public agencies in the same or related cases. Thus in *People* v. *Municipal Court (Byars)* (1978) 77 Cal.App.3d 294 [143 Cal.Rptr. 491] the trial court had disqualified a city attorney from both prosecuting a defendant for an assault on a police officer and defending the defendant's civil law suit against the city. The court explained the disqualification of the city attorney "will require either that new government legal units be created or private counsel retained for the defense of the governmental units. In either instance, there is the potential for a substantially increased call upon an already severely strained tax base. [¶] The dislocation and increased expense of government is not justified by the speculative and minimal benefit to be obtained." (77 Cal.App.3d at p. 301.) Similarly, in *In re Lee G.* (1991) 1 Cal.App.4th 17 [1 Cal.Rptr.2d 375] the court allowed the county counsel to represent both the petitioning agency in dependency court and the public conservator in the mother's conservatorship.

These and like cases are clearly distinguishable from the one before this court. First, allowing a single government law office to represent two different parts of government is far different from allowing that same office to represent a government agency and a child in the same proceedings involving crucial questions about the fate of that child. Second, for all the reasons discussed earlier in this opinion the benefit of choosing independent counsel over dual representation can hardly be characterized as "speculative and minimal." In any event, it is not for this appellate court to place a price

tag on the value of independent counsel. The law gives children a right to counsel in dependency proceedings where it is to be decided who is to raise them and which services and how much security they shall enjoy. It is essential the courts ensure those children receive competent counsel dedicated to serving their individual interests even if that is not the cheapest alternative available.

Petitioner also questions the provision in Dependency Local Rule No. 17.16 advising dependency judges to refer the child to DCLS lawyers as a first choice, rather than the attorney panel. At oral argument, petitioner's counsel emphasized the county funds the DCLS law firms which, in turn, employ salaried lawyers to provide the representation. Counsel further stated the county established these DCLS firms primarily for the purpose of providing representation to parents not children in dependency proceedings. Petitioner then argued the court cannot increase the budgets of those offices by ordering them to undertake representation of more clients, in this case children.

This argument overlooks the fact Dependency Local Rule No. 17.16 only states a preference and requires an initial referral to a DCLS office. It is not surprising the dependency judges responsible for drafting Dependency Local Rule No. 17.16 and its predecessor policy assigned such a preference, given the reports from local bodies discussed earlier recommending use of DCLS lawyers to represent children in dependency court. But Dependency Local Rule No. 17.16 does not purport to require the county to increase the budget of the DCLS offices. Instead the rule provides "[i]n the event that no DCLS attorney is available to represent a child, an attorney from the Welfare and Institutions Code section 317 attorney panel shall be appointed to represent the child." (Dependency Local Rule No. 17.16(b)(2)(a)(ii).) If some of the reports mentioned above are correct, representation by panel members may be more costly and less effective, but the mix of DCLS and panel attorney representation is in the control of the county not the courts. To the extent the county elects against providing representation of children through DCLS, according to Dependency Local Rule No. 17.16 the representation will be provided through members of the attorney panel.

Courts have a vital stake in ensuring all parties before them are represented by competent, independent counsel. Without that, the judges are seriously handicapped in their ability to make correct and just decisions. In the context of dependency court, and the children caught up in those

proceedings, the Legislature also has recognized that simple truth by enacting section 317.5.[4] This section expressly defines each of those children as a "party" and then provides all parties represented by counsel are entitled to "competent counsel." The dependency court judges in Los Angeles have a responsibility to their court and to the children who come before them to take all reasonable steps to ensure those children are afforded their right not just to counsel but to "competent counsel." It is reasonable for these judges, based on their vast experience with thousands of cases, to conclude a lawyer no matter how skilled cannot provide "competent" counsel to a child unless that lawyer also is completely independent of other clients and loyalties.

For the above reasons, we conclude the trial court properly appointed a DCLS lawyer to represent Shawn B. either as a matter of individual discretion or in compliance with a court-wide policy then embodied in the May 9, 1996, policy now formalized in the July 1, 1996, Dependency Local Rule.

### DISPOSITION

The petition is denied and the alternative writ is discharged. Real party in interest to recover his costs.

Lillie, P. J., and Woods, J., concurred.

Petitioner's application for review by the Supreme Court was denied April 2, 1997.

---

[4]See footnote 2, *ante*, for the text of this code section.