[No. B146391. Second Dist., Div. One. Feb. 1, 2002.]

THE ALLIANCE FOR CHILDREN'S RIGHTS, Plaintiff and Respondent,
v.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Defendant and Appellant.

1130

**COUNSEL**

Lloyd W. Pellman, County Counsel, Ada Gardiner, Assistant County Counsel, James M. Owens, Brandon T. Nichols and Jerry M. Custis, Deputy County Counsel, for Defendant and Appellant.

Horvitz & Levy, David S. Ettinger, Patricia Lofton; The Alliance for Children's Rights, Andrew A. Bridge, Amy Pellman and Lara J. Holtzman for Plaintiff and Respondent.

## OPINION

**ORTEGA, Acting P. J.**—Los Angeles County Department of Children and Family Services (DCFS) social workers visit children declared dependent court wards (Welf. & Inst. Code, § 300)[1] in the children's placement while the children remain court wards. DCFS regulations generally require assigned social workers to visit each ward monthly. However, the regulations permit DCFS supervisors to approve less frequent social worker visits under specified circumstances, such as when the child's placement is positive and of long duration. (For convenience, we adopt the parties' nomenclature and refer to DCFS decisions to permit such visits less frequently than monthly as "waivers" or "variances.") The regulations permit DCFS to determine when variances are appropriate.

The Alliance for Children's Rights (Alliance), an advocacy group, believed DCFS routinely approved variances for budgetary rather than case-appropriate reasons, to accommodate high social worker caseloads. Alliance originally sought a blanket order prohibiting DCFS from using waivers in any case, essentially mandating monthly visits in all cases. The trial court refused to issue such a broad order. However, over DCFS's opposition, the trial court issued a ruling requiring DCFS to submit each variance to the dependency court judge supervising that particular ward for approval at a noticed hearing.

DCFS appeals. Preliminarily, Alliance contends the ruling was a blanket order, subject to review only by writ petition. (See Code Civ. Proc., § 575.1; Cal. Rules of Court, rule 981.) DCFS responds the order was an appealable injunction. (Code Civ. Proc., § 525 et seq.) We need not resolve this procedural dispute. If the ruling was an injunction, the parties correctly agree it was appealable. (Code Civ. Proc., § 904.1, subd. (a)(6).) If the ruling was a nonappealable order, subject to writ review (see *Contra Costa Newspapers, Inc. v. Superior Court* (1998) 61 Cal.App.4th 862, 868 [72 Cal.Rptr.2d 69]; *Kalivas v. Barry Controls Corp.* (1996) 49 Cal.App.4th 1152, 1158-1160 [57 Cal.Rptr.2d 200]), we would issue an OSC (order to show cause) and have the matter briefed and argued. Because the parties and the court treated the case as an appeal, we leave it in that posture, without thereby deciding whether it constituted an injunction or a blanket order. Again, for convenience, we label the challenged ruling an order.

On the merits, DCFS raises several related challenges to the order. DCFS contends the order violates the separation of powers by wrongly (1) imposing judicial review of decisions properly made exclusively by DCFS, and (2)

---

[1] All further undesignated section references are to the Welfare and Institutions Code.

by compelling the spending of money. DCFS also contends the order is based on legal and factual errors and omissions, including the trial court's reliance on its own experience, which was not part of the record. Finally, DCFS argues Alliance failed to show the existing practice harmed dependent wards, or that the challenged order would better protect them.

Alliance responds the order is proper as part of the dependency court's exercise of jurisdiction over each ward's case, and was legally and factually supportable.

We reject DCFS's claims and affirm the challenged order.[2]

## FACTS

In April 2000, Alliance petitioned the juvenile court for a "special order" "prohibit[ing] the use of children's social worker visitation waivers by . . . [DCFS] for children placed in state licensed and foster family agency certified foster homes." The petition alleged: "Without minimal monthly visitation, Los Angeles County lacks the ability to know the full nature and quality of care foster children receive, the full extent of harm children may face in foster care, and how to protect children from future harm while in foster care."

On May 1, 2000, DCFS filed its opposition. Along with urging dismissal because the petition was not supported by points and authorities or exhibits and declarations, DCFS argued the request was unnecessary and violated the separation of powers.

The trial court gave Alliance time to submit evidentiary support for its requested order. Both sides submitted numerous reports, declarations, regulations, and other exhibits supporting and opposing the requested order.

1) Alliance submitted a report by the Los Angeles County Foster Care Task Force. The report concluded children in foster care received inadequate supervision to ensure their safety and recommended ending visitation waivers.

2) Alliance submitted a Los Angeles County Grand Jury Report. That report noted that DCFS social workers often do not make monthly visits, sometimes visiting as infrequently as four months to two years. The report

---

[2]We grant the parties' requests to augment the record and for judicial notice. We also permit Alliance to file its supplemental November 7, 2001, letter brief.

noted that the infrequent visits made the children uncomfortable when visits did occur.

3) Alliance also submitted the Standards of Excellence for Family Foster Care Services by the Child Welfare League of America. Those standards explained the social worker's crucial role in assuring the child's safety and proper progress, and recommended at least monthly visits. The standards further recommended either more or less frequent visits depending on a particular child's situation and progress.

4) The former dependency court supervising judge declared how reliant the court was on social worker reports for information on foster children, and that infrequent visits deprived the court of accurate and necessary information. The judge also declared DCFS rarely notified the court if waivers were in effect for particular children.

5) Several dependency court attorneys who represented dependent children and the director of the Western Child Welfare Law Center declared less frequent visits generally were not in the children's best interest and frequently failed to detect deteriorating conditions in the placement, the child, or both.

6) Alliance submitted a Public Records Act request to DCFS for the monthly number of waivers in DCFS-supervised wards and documents supporting these waivers. DCFS responded that it "does not currently compile this information and is unable to meet your request."

7) DCFS submitted extensive documentation regarding the Los Angeles County Board of Supervisors's study of the issue. The board's Foster Care Task Force recommended the board adopt a mandatory monthly visit standard, which the task force believed would require additional funding and legislation. DCFS opposed the recommendation because it would require nearly $4 million in annual costs, but noted that much of that cost could be reimbursed by the state. DCFS also responded it would be in favor of the recommendation if it was sufficiently funded.

DCFS objected to Alliance's additional briefing and evidence. DCFS moved to dismiss and to strike the additional briefing as expanding the case, and lodged evidentiary objections to the evidence.

The trial court held a hearing on September 25, 2000. Regarding DCFS's motions to strike and dismiss and objections to Alliance's evidence, DCFS argued Alliance's supplemental briefing and evidence "put [DCFS] in a

position where we had no opportunity to reply to the documents that they submitted to the court. [¶] [DCFS] think[s] that basic fairness would allow us an opportunity to reply. There is a case that basically says you can't enlarge the application for a motion in a reply. The reason is that there's no opposition to a reply. [¶] That's it." After a lengthy discussion about the propriety of DCFS's motions to strike and dismiss and evidentiary objections, DCFS stated: "[I]f the court wants to consider all the stuff [in our] motion, our reply, our motion to strike, as a basic . . . response to whether or not the court has the power to [grant Alliance's requested relief], we don't have an objection to that." Later, DCFS reiterated: "If the court wants to consider all this at once and go to the merits, [DCFS is] not going to object." The parties and the court later agreed the court could consider all the exhibits submitted by both parties.[3]

The hearing then proceeded to arguments on the merits of Alliance's petition. DCFS began its argument by stating Alliance was "asking the court to issue what is tantamount to a regulation or statute, because it applies to all our cases without looking at whether or not it's a good idea in this specific instance or not[.]"

This colloquy followed: "The Court: . . . [I]s the practice that any individual dependency judicial officer may follow, as I have in particular individual cases, based upon the record to order that the worker visit, notwithstanding whether a waiver has been sought or not, to order the worker to visit the child monthly, weekly, daily? Is that in excess of the court's authority or not?

"Mr. Owens [DCFS counsel]: . . . [¶] If the court directed us on a specific case to visit the child on a weekly basis, on a daily basis, on a hourly basis, we would make every attempt to do that.

"The Court: I appreciate the desire to comply. [¶] My question is, legally, do you believe that . . . the court has the authority to make that order or not?

"Mr. Owens: I think it largely depends on whether the order is based upon facts that are present within the circumstances of the case that would justify the issue—

---

[3]DCFS thus waived any challenge to the trial court's alleged "failure" to rule on the apparently abandoned motions to strike and dismiss and the evidentiary objections. (*Haskell v. Carli* (1987) 195 Cal.App.3d 124, 129 [240 Cal.Rptr. 439]; see 3 Witkin, Cal. Evidence (4th ed. 2000) Presentation at Trial, §§ 371, 389, pp. 460-461, 482.)

"The Court: Let's presume that the court . . . makes a report that states facts that indicate this is a special needs child who's had recent emotional problems or any number of other possibilities.

"Mr. Owens: On first blush, I would say yes, you have the authority to do this on a case-by-case basis. That's not what [Alliance is] asking for."

The court continued its questioning: "[DCFS] concede[s] and agree[s] with [Alliance] and the court that the court has the lawful authority to issue such an order, contrary as that may be to the language of the regulation? That, according to your argument, fully and exclusively empowers [DCFS] to follow the procedure in the regulation waiver process and file the waiver. How is that different in an individual case, just on a legal basis, from the court doing so on a blanket basis?"

Mr. Owens answered: ". . . [Y]ou still have the regulation. The regulation is still valid. Perhaps maybe even the waiver that [DCFS] had made to the regulation is still valid. [¶] However, what you have is you have a court order that's saying that after reviewing this case what I'm saying on this case, because of the special circumstances of this child, that I think that I'm going to order that you visit every three weeks or whatever. And [if DCFS did not comply] what [DCFS] would be violating isn't that regulation. [DCFS] would be violating your court order."

As the colloquy continued, DCFS counsel repeatedly agreed that the court could order visitation more frequently than the regulations permitted, so long as it did so in an individual case after considering the specific facts of that case.

Later, the court and parties discussed whether DCFS knew how many waivers had been issued. As noted, DCFS did not keep cumulative records on that topic, although DCFS could review any particular case and determine whether a waiver had been issued in that case. Alliance argued DCFS did not monitor waivers, did not know how many had been granted or under what circumstances, or whether doing so was in the best interest of the children. In response, DCFS cited a statistical analysis, studying 2 percent of its cases, which extrapolated an estimate that waivers had been granted in about 11 percent of cases, and were generally appropriate. DCFS argued the court had to accept that study because it "validate[d] itself."

In rejecting DCFS's argument that the court had to accept the study, the court stated: "My experience, sitting for five years as a dependency judicial officer, is that in many cases the fact that a waiver was obtained or sought

and a child who is a dependent of the court was not visited on a regular 30-day basis was harmful to that child's best interests. [¶] So I am not persuaded that a two percent sample is an appropriate way to determine whether the children of this county, . . . the 30,000 or so that are in foster care—are appropriately cared for, when I know from five years of experience . . . conducting tens of thousands of hearings for many thousand children, I know that in the cases where I made orders to workers to visit a child more frequently even than the 30-day standard, or made orders precluding [DCFS] from . . . waiving the 30-day requirement, I know that in every case the children are not safe and protected. [¶] So I'm not convinced by the study." Despite this statement, in its later findings supporting the challenged order, the court accepted and relied upon the study.

The court later announced a tentative ruling: "I am inclined to issue an order establishing a process by which [DCFS] would have the burden of filing a request with the court in any case where it seeks a waiver from the 30-day visitation rule. And if in fact this is the order that I make, I will set forth in detail what I would expect to be contained as the minimum required contents of such a request, the absence of which would permit the individual judicial officer to deny it without hearing." The court explained why it was considering such an order, that it would continue to study and think about the issue, and would permit each side to submit one additional brief to address all the issues previously briefed and discussed, including the tentative ruling.

On December 5, 2000, the court held a second hearing. After hearing further argument, the court issued its six-page ruling. The court made the following findings: "1. DCFS conducted a random audit of cases in June 1999 which revealed that DCFS social workers requested waivers from the monthly visitation standard in 11% of 1100 cases audited. It appears that all such audited waivers were granted. [(Declaration of Anita Bock, Aug. 24, 2000).] Based on this evidence, the Court finds that the practice of obtaining foster child visitation waivers is common practice in Los Angeles County.

"2. No evidence was presented to the Court regarding whether any process exists whereby . . . DCFS or any other entity reviews and considers individual waiver requests to determine whether the request meets the regulatory established criteria.

"3. DCFS admitted that juvenile dependency judicial officers have the authority on a case by case basis to order DCFS to visit dependent children monthly or more often if necessary.

"4. Los Angeles County juvenile dependency judicial officers rely upon DCFS court reports in order to meet their statutory obligations set forth above . . . .

"5. The information, observations, evidence and child statements contained in these court reports must be current, accurate and complete in order for Los Angeles County juvenile dependency judicial officers to fulfill these statutory obligations. In the absence of monthly, or if necessary, more frequent visits by DCFS social workers with each dependent foster child, the information, observations, evidence and child statements contained in these court reports may not be current, accurate and complete."

The order stated: "1. Prior to acting on a visitation waiver in any case involving a dependent of the Los Angeles Juvenile Court, every DCFS social worker must submit a report ('waiver report') to the judicial officer in that case, with notice to all other parties. Such waiver report shall state whether or not . . . or DCFS has reviewed and considered the waiver request and, if so, set forth the . . . or DCFS determination, including a copy of any written documentation of the . . . or DCFS determination. Additionally, the waiver report shall set forth the grounds for the waiver request including a factual basis supporting each and every criteria required by *Child Welfare Service Manual*, Regulations 31-320.4, et seq., to establish that there are grounds for issuance of a waiver.

"2. The judicial officer shall set a noticed hearing at the earliest possible date for review of the waiver report.

"3. At the hearing, the judicial officer will read and consider the waiver report and consider other relevant evidence to determine whether grounds exist for issuing a specific order regarding frequency of visitation.

"4. By January 8, 2001, DCFS must provide a list of all dependent children who are currently not visited monthly pursuant to a visitation waiver, including the child's name and case number, either to the Presiding Judge of the Juvenile Court or to the judicial officer hearing each such child's case. This list shall be made available, by court department, to all counsel who regularly practice in each department."

At the hearing, the court explained its ruling: "I don't see any basis that the Alliance . . . lacks standing. This organization and/or others like it have often brought petitions to the court for blanket orders that often have been agreed to by the County without such an objection being made.[4]

"The question about preemption is not persuasive as it is set forth here. Particularly referencing action by the County Board of Supervisors seeking legislative action or that the court is requiring the allocation of funds to carry out the order.

"The court's order will simply set forth what the court believes is consistent with the law. The court is not ordering [DCFS] to spend money in issuing whatever blanket order that I issue anymore than [in] an individual case. When a court orders a social worker to visit a child more frequently because of certain specific facts . . . , that is not an order to spend money. Even if there is an order to carry out that order, [DCFS] has to expend more money; so I'm not persuaded by the statements that the court lacks authority to require the spending of money because that's not what this court is doing. . . . [I]f that was the status of the law, the court[]s could rarely order anything because generally it cost[s] money for most orders that most courts make most of the time.

"The issue of separation of powers is an important one, and frankly, that is the reason that I declined to issue the order requested by [Alliance]. Al[though] I am not necessarily persuaded by the county's argument that to do so would violate the separation of powers. I believe that it is a possibility that it would do so. It's a close issue. It's a difficult issue. I don't have a clear answer . . . so therefore, I wanted to issue an order that I believed raised no constitutional issues.

". . . [At the September 25 hearing] DCFS admitted that juvenile judicial officers have the authority on a case-by-case basis to order DCFS to visit dependent children monthly or more often if necessary.

"I asked that question quite knowingly and for a clear reason. I believe that the individual judicial officers have routinely issued such orders as I have when I have sat on individual cases. And I wanted to know if the county thought that to do so was unauthorized, illegal or an unconstitutional

---

[4]In its opening brief, DCFS did not raise a standing issue. It did so in its reply brief. We consider the argument waived. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764-765 [60 Cal.Rptr.2d 770]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 616, 665, pp. 647-648, 698.)

violation of the separation of powers. Counsel stated unambiguously that this court had authority to do so.

"And it was, frankly, based upon the agreement of all concerned that individual bench officers had that authority that resulted in my devising the order that I will issue which is not an order prohibiting waivers. It is simply an order that [DCFS] must inform the court when they anticipate pursuing a waiver so the court can consider not whether to deny the waiver because I'm respecting the separation of powers, recognizing that this court may or may not have the authority to do so, but the court may want to take that into account in deciding whether it should issue a specific visitation order, as all counsel had agreed, the court had the authority to do. So, really, all that I'm doing in the order that I will issue is requiring notice and evidence to be presented to the court. Evidence that is essential for the court to determine whether it should issue a specific order necessary to exercise its responsibilities to protect the best interest of the child . . . ."

## DISCUSSION

We begin by disposing of some issues raised by DCFS which are not supported by the record. First, the trial court did not rely on its own experience outside the record in explaining why it rejected DCFS's argument that the court had to accept the DCFS study. The study produced an estimate that waivers were granted in 11 percent of its cases and were generally appropriate. ■ The court as the fact finder was not required to accept the study's accuracy or conclusions, particularly where it was contradicted by the declarations of other juvenile court attorneys and judges who had handled thousands of cases and reached the opposite conclusion. In any event, the court eventually accepted the study, citing it in its factual findings. Thus, the court did not err.

■ Similarly, we reject DCFS's arguments that some of the court's findings were not supported by substantial evidence. The declarations and voluminous reports demonstrated the experience of many lawyers, judges, and groups who had handled and studied thousands of cases. They concluded that waivers were granted without the particularized examination DCFS concedes is required even under its own regulations, and that waivers frequently were deleterious to the child. While the declarations did not discuss specific cases in detail, they provided substantial evidence to support the court's factual conclusions. DCFS's position was supported by its small statistical study, and other reports concluding that implementing monthly visitation in all cases would cost an additional $4 million annually. The DCFS study involved a sampling of only 2 percent of its cases.

Children become dependent court wards because they are abused, abandoned, or neglected by their parents. (§ 300.) "The purpose of [statutes governing dependent court wards] is to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court . . . . When the minor is removed from his or her own family, it is the purpose of this chapter to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents. This chapter shall be liberally construed to carry out these purposes." (§ 202, subd. (a).) In addition, "[m]inors under the jurisdiction of the juvenile court who are in need of protective services shall receive care, treatment and guidance consistent with their best interest . . . ." (§ 202, subd. (b).) To protect these statutory purposes, the supervising court "may include provision of a full array of social and health services to help the child and family and to prevent reabuse of children." (§ 300.2.) Courts "shall consider . . . the best interests of the minor in all deliberations pursuant to this chapter." (§ 202, subd. (d).)

In the context of supervising appointed counsel's representation of a dependent ward, including counsel's duty to conduct and request any necessary investigation required for the child's best interest, "[t]he court shall take whatever appropriate action is necessary to fully protect the interests of the child." (§ 317, subd. (e).)

Once a child becomes a dependent ward, "the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child, including medical treatment, subject to further order of the court. To facilitate coordination and cooperation among government agencies or private service providers, or both, the court may, after giving notice and an opportunity to be heard, join in the juvenile court proceedings any agency or private service provider that the court determines has failed to meet a legal obligation to provide services to the child. In any proceeding in which an agency or private service provider is joined, the court shall not impose duties upon the agency or private service provider beyond those mandated by law." (§ 362, subd. (a).)

█ Dependency courts are "afford[ed] . . . the broadest possible scope of discretion in making decisions that promote the best interest of the minor. (§§ 300.2, 366.26, subd. (h).)" (*Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 758 [89 Cal.Rptr.2d 407].) In doing so, the court may issue blanket orders, applicable to all such cases, so long as the order is consistent with statutes and court rules. (*Los Angeles County Dept. of Children etc. Services v. Superior Court* (1996) 51 Cal.App.4th 1257, 1267 [59 Cal.Rptr.2d 613]; *In re Jeanette H.* (1990) 225 Cal.App.3d 25, 34-35 [275 Cal.Rptr. 9].) These basic principles are undisputed.

 The issue is whether the trial court's order, requiring individual dependency court bench officers to determine whether a waiver is in the best interest of the particular ward being supervised by that bench officer, violates the separation of powers.

Under state standards set by the Department of Social Services (DSS), social workers must visit each dependent child monthly. (DSS Manual, §§ 31-320.2, 31-320.2.3, 31-320.2.41.) This monthly visitation requirement is mandatory, not discretionary. (*Scott v. County of Los Angeles* (1994) 27 Cal.App.4th 125, 142 [32 Cal.Rptr.2d 643].) However, the manual permits exceptions: "The social worker shall be permitted to have less frequent visits, up to a minimum of once every three calendar months, only if all of the following criteria are met and written supervisory approval has been obtained: [¶] (a) The child has no severe physical or emotional problems caused or aggravated by the placement. [¶] (b) The placement is stable. [¶] (c) Subsequent to development of the case plan, and prior to any exception, the child has been visited in three of the most recent four consecutive months. [¶] (d) The case record documents the existence of at least one of the following circumstances: [¶] (1) The child is placed with a relative. [¶] (2) The child is placed with a foster parent who has provided continuous care for the child for a minimum of 12 months. [¶] (3) The child is placed voluntarily and the parent(s)/guardian(s) identified in the case plan is making visits at least monthly. [¶] (4) The child is under two years of age and less frequent social worker-child visits would facilitate reunification by permitting more frequent social worker-parent/guardian visits. [¶] (5) The child is visited once each calendar month by one or more of the following persons when such persons are providing services pursuant to the case plan; and there is a verbal or written agreement with any such services provider, documented in the case record, that he/she will provide contact reports to the social worker: [¶] (A) Other social services staff of the county. [¶] (B) Staff of another services agency. [¶] (C) A physician or other health professional. [¶] (6) The child is not placed in a group home or community treatment facility. [¶] (e) The social worker shall ensure that verbal or written reports are received and documented in the case record." (DSS Manual, § 31.320.411.)

We emphasize we review the order entered by the trial court, not the order originally sought by Alliance. The trial court's order does not affect DCFS's decision whether a waiver is appropriate in particular cases. The order does not prevent DCFS from using waivers in general. The order retains DCFS's discretion to initiate and study whether a waiver is appropriate in an individual case. The individual caseworker is free to initiate a waiver inquiry at any time, and present it to DCFS supervisors for their review and decision. The order does not require additional funding or staffing, since the regulations require monthly visits unless and until a waiver is considered. The only

additional step contemplated by the order is court review before, rather than after, less frequent visitation is put in place.

As conceded by DCFS below, and as the statutes contemplate, the court is empowered and obligated to review the frequency and adequacy of visitation, among other things, as part of its ongoing supervision of the ward's progress. The court is empowered to order more or less frequent visitation depending on the child's particular circumstances. The DSS Manual permits the social worker to visit less frequently under specified circumstances. Before such a waiver can begin, the manual requires the social worker to seek supervisory approval. The necessity for such approval does not remove the court's ability to supervise visitation, nor does it conflict with a requirement that the court may inquire into the efficacy of visitation. The manual provisions simply do not remove the court's power to supervise, and ultimately control, the frequency of visitation to comply with its statutory oversight responsibilities.

If DCFS were correct, only it could decide whether less frequent visitation were appropriate. Having done so in an individual case, DCFS could prevent the court from reviewing or altering the frequency of visitation. Such an interpretation is inconsistent with the dependency court's undisputed power to regulate visitation frequency in each case.

Much, if not all, of DCFS's argument seems addressed to the original order sought by Alliance, rather than the actual, far more limited order made by the trial court. We conclude the trial court's order does not violate the separation of powers or improperly divest DCFS of its discretionary role in the waiver process.

DISPOSITION

We affirm the challenged order.

Vogel (Miriam A.), J., and Mallano, J., concurred.

A petition for a rehearing was denied February 26, 2002, and appellant's petition for review by the Supreme Court was denied May 15, 2002.