[Crim. No. 17337. First Dist., Div. One. Oct. 30, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
MELVIN HARRIS, Defendant and Appellant.

**COUNSEL**

Paul N. Halvonik and Quin Denvir, State Public Defenders, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant

State Public Defender, Dennis P. Riordan, Isadora W. Lomhoff and David Lew, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Timothy A. Reardon and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.**—Defendant Melvin Harris was convicted, on a jury's verdicts, of 15 assorted criminal offenses. His victims were five young boys, aged nine to thirteen. Each of the boys testified that Harris had induced or forced him to enter an automobile (three said it was a "white automobile") which was then driven to a secluded building or other area where at knife point, or threat of shooting, Harris compelled him to submit to an act of sodomy. Each boy had promptly reported the incident, and each showed physical evidence of his victimization.

The crimes, and their modus operandi, received much newspaper publicity in the locality of their commission. A young man, Ron, who had thus been made aware of the crimes' perpetration, testified over a hearsay objection at Harris' trial to the following: "A. What I exactly saw was the Defendant here in a white—in a white Chevy, '67 model, and he was trying to encourage a little boy to get into his car. This is why I wrote down the license plate number. . . . Q. Did you hear the boy saying anything that made you think the Defendant was trying to encourage the boy into the car? A. I did so. Q. And what did the boy say? A. He said, 'I don't have to get in your car, Mister, to show you where it's at. It's just right down there.' " The vehicle's license number was reported to the police. It led to Harris' apprehension, and identification by each of the crime victims as his assailant.

■ Harris' first appellate contention is that the above quoted testimony of Ron was erroneously allowed over his *hearsay* objection.

At least debatably, it may be that the "little boy's" statement, "I don't have to get in your car, Mister, to show you where it's at," carried the implication that the car's driver had asked that the boy get in his car, and that such implication would thus be based upon hearsay. But Ron's

testimony was patently not hearsay insofar as it related that he had observed Harris seated in a white automobile talking to a little boy outside the car. Since the young boys' violator had engaged in the consistent practice of stopping his white car and talking to his selected victims, that evidence had *some* "tendency in reason" (see Evid. Code, § 210) to establish a *similar modus operandi,* and the *identity* of Harris as the offender (see Evid. Code, § 1101). Although its probative value may not have been great, the weight to be given it was properly to be determined by the jury, not the trial court or this court.

Harris' objection, running to the *entirety* of Ron's testimony, was invalid, and the overruling of it did not constitute error.

"Where inadmissible evidence is offered, the party who desires to raise the point of erroneous admission on appeal must *object* at the trial, *specifically* stating the grounds of his objection, and directing the objection to the *particular evidence* which he [properly] seeks to exclude." (Witkin, Cal. Evidence (2d ed. 1966) § 1285, p. 1188, and see authority there collected.) And it is settled law that where evidence is in part admissible, and in part inadmissible, "the objectionable portion cannot be reached by a general objection to the entire [evidence], but the inadmissible portion must be specified." (*People* v. *Lang Transportation Corp.,* 43 Cal.App.2d 134, 141 [110 P.2d 464]; and to the same effect see *Shatto* v. *Crocker,* 87 Cal. 629, 631 [25 P. 921]; *Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists,* 227 Cal.App.2d 675, 712 [39 Cal.Rptr. 64]; *Newton* v. *Thomas,* 137 Cal.App.2d 748, 768 [291 P.2d 503]; *Ballos* v. *Natural,* 93 Cal.App. 601, 608 [269 P.2d 972].)

The trial court instructed the jury on the limited effect of Ron's testimony. They were told, "Such evidence was not received and may not be considered by you to prove that he, the Defendant, is a person of bad character or that he has a disposition to commit crimes. Such evidence was received and may be considered by you only for the limited purpose of determining if it tends to show either of the following: The *identity* of the person who committed the crimes of which the Defendant is accused, or *a characteristic method, plan or scheme* in the commission of criminal acts similar to the method, plan or scheme used in the commission of the offenses in this case. For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in this case. You are not permitted to consider such evidence for any other purpose." (Our italics.)

■ A subsidiary contention of Harris is: "Before [Ron's] evidence of an uncharged offense is admissible at trial, a foundational showing must first be made by clear and convincing proof that such an offense was actually committed."

The testimony of Ron, as we view it, established no "uncharged offense;" it is doubtful whether the point at which a criminal attempt (Pen. Code, § 664) would have resulted, had been reached. (See *In re Smith,* 3 Cal.3d 192, 200 [90 Cal.Rptr. 1, 474 P.2d 969].) But we find it to be of a high order of credibility on the issues for which it was admitted, and thus clear and convincing.

Moreover, we observe that Evidence Code section 1101's recognition of the admissibility of certain evidence to prove such things as "preparation," "plan," and "identity," is not limited, as suggested by Harris, to "uncharged offenses"; it embraces also "other acts."

It is notable also that declarations such as that of the "little boy" overheard by Ron have often been held not hearsay at all, but *circumstantial evidence* from which any logical and relevant inference may be drawn, including that of criminal activity. An illustration: An anonymous telephone caller's declaration offering to place bets, to a policeman during the course of a bookmaking raid, "was a circumstance to establish" the premises' use by its occupant for unlawful purposes. (*People* v. *Fischer,* 49 Cal.2d 442, 447 [317 P.2d 967].)* By a parity of reasoning it may be said that the "little boy's" overheard declaration was admissible circumstantial evidence, from which could be drawn the reasonable inference that he was rejecting an invitation of Harris to enter his automobile.

■ Harris' remaining contention—"the trial court erred by failing to exclude appellant's 1967 prior robbery conviction for impeachment purposes"—is also found invalid.

*Other such authority will be found in *Rogers* v. *Superior Court,* 46 Cal.2d 3, 8 [291 P.2d 929]; *People* v. *Kelley,* 22 Cal.2d 169, 176 [137 P.2d 1] [cert. den., 320 U.S. 715 (88 L.Ed. 420, 64 S.Ct. 264)]; *People* v. *Warner,* 270 Cal.App.2d 900, 907 [76 Cal.Rptr. 160]; *People* v. *Carella,* 191 Cal.App.2d 115, 140 [12 Cal.Rptr. 446]; *People* v. *Miller,* 146 Cal.App.2d 444, 449 [304 P.2d 208]; *People* v. *Cohn,* 94 Cal.App.2d 630, 637 [211 P.2d 375]; *People* v. *Henry,* 86 Cal.App.2d 785, 789 [195 P.2d 478]; *People* v. *Klein,* 71 Cal.App.2d 588, 592 [163 P.2d 71]; *People* v. *Radley,* 68 Cal.App.2d 607 [157 P.2d 426]; *People* v. *Joffe,* 45 Cal.App.2d 233, 235 [113 P.2d 901]; *People* v. *Reifenstuhl,* 37 Cal.App.2d 402, 405 [99 P.2d 564].

An accused's prior robbery conviction, of course, reasonably concerns his integrity, and thus bears upon the issue of his veracity. (See *People* v. *Beagle,* 6 Cal.3d 441, 453 [99 Cal.Rptr. 313, 492 P.2d 1].) Harris' purpose was patently the sexual molestation of his victims. But as an incident to that purpose he had removed small change from the pockets of two of the boys, thus bringing about two robbery charges against him. Harris argues that the trial court's questioned ruling was violative of *Beagle's* admonition that: " 'As a general guide, those convictions which are the same crime should be admitted sparingly.' " (6 Cal.3d, p. 453.) But *Beagle* also points out that this is only one of the factors to be *considered* by trial courts in "the sound exercise of judicial discretion." Another such consideration was expressed by *Beagle* as: "No witness including a defendant who elects to testify in his own behalf [as did Harris] is entitled to a false aura of veracity." Here we discern no abuse of judicial discretion.

As pointed out, we have found neither error nor abuse of judicial discretion in the proceedings attending Harris' trial. But assuming error, arguendo, as to any or all of his appellate contentions we are of the opinion that the error was harmless according to the criteria of the state's Constitution, article VI, section 13; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243] [cert. den., 355 U.S. 846 (2 L.Ed.2d 55, 78 S.Ct. 70)]; and *Chapman* v. *California,* 386 U.S. 18, 24, [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065].

The judgment is affirmed.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied November 27, 1978, and appellant's petition for a hearing by the Supreme Court was denied December 27, 1978.