[No. D004422. Fourth Dist., Div. One. Sept. 29, 1987.]

PAUL HASKELL et al., Plaintiffs and Respondents, v. GEORGE A. CARLI et al., Defendants and Appellants.

COUNSEL

Kartvedt & Smith, Maynard O. Kartvedt and Michael Rogers for Defendants and Appellants.

Sutherland & Gerber and Neil Gerber for Plaintiffs and Respondents.

OPINION

BENKE, J.—The Carlis appeal the granting of a motion for summary adjudication of issues and the summary judgment which was premised on those issues.

By written agreement dated November 21, 1969, Emanuel Barrell and James S. House, who had been friends for years, entered into an agreement which they designated a "Land Lease Purchase" of Barrell's 115 acres in Seeley, California.

The written agreement is set forth on a preprinted Wolcott form to which the parties made substantial changes. Designating Barrell as "seller and lessor" and using "buyer and lessee" to designate House, they added the term "purchase" wherever the term "land lease" appears and struck out a preprinted paragraph setting forth standard obligations of a lessee.

The agreement was made for a "term" of 11 years commencing on June 1, 1970, and "ending" on January 1, 1981, "at the total rent or sum of $69,575.00" payable in installments as follows: "Two payments each year, each payment to be $3,162.50. The payments are to be made on June 1 and January 1 of each year, and are to begin June 1, 1970."

A second page of the agreement contains the following language: "After eleven years Emanuel Barrell agrees to give JAMES S. HOUSE the 115 acres, more or less, Tr. 61 and part of Tr. 62, free and clear."

Neither House nor Barrell lived the 11-year period contemplated by their agreement. House died April 14, 1973. When his estate was probated, his interest in the land lease-purchase agreement was distributed to plaintiffs Thelma Haskell and Paul Haskell. Thelma is the sister of James House. In 1977, Emanuel Barrell conveyed his interest in the subject property to his nephew, defendant George A. Carli. Emanuel Barrell died April 15, 1980.

Nowhere in the written agreement is there a provision directing what would occur if, as actually happened, House died before the 11-year period set out in the agreement.

On July 10, 1981, the Haskells filed an action against the Carlis for specific performance and damages. The complaint asked the Carlis be compelled to execute and deliver a conveyance of the property pursuant to the November 19, 1969, agreement. The Carlis filed a cross-complaint for ejectment, damages and for quiet title.

The Haskells brought a motion for summary adjudication of issues which was heard September 20, 1983, the thrust of which was to ask the lower court designate the agreement a land sale which was fully assignable by House. The Carlis opposed the motion, urging the agreement was intended to be personal to House, and, when he died, the agreement died with him.

The record here does not reflect either party filed a separate statement of disputed facts for use at the adjudication hearing. (Code Civ. Proc., § 437c.) However, the Carlis sought to introduce various items of evidence, including a will signed by Barrell on December 31, 1969, approximately one month after the execution of the agreement. In the will, Barrell states: "FIFTH I have leased my ranch in Imperial County, California, consisting of 115 acres located immediately south of Sunbeam Lake, to JAMES HOUSE. JAMES HOUSE is to pay Fifty-Five Dollars ($55.00) per acre per year as rental for said land, payable semi-annually in advance, one-half thereof on January 1st and one-half thereof on July 1st of each year. If JAMES HOUSE faithfully makes said payments during the ensuing eleven (11) years from date hereof, to wit: until December 31, 1980, then JAMES HOUSE shall own said ranch outright, and I hereby give, devise and bequeath said ranch to said JAMES HOUSE subject to his making the payments to me or my estate. In the event JAMES HOUSE dies before the eleven-year period has elapsed or fails to pay the rental on said property, then this gift shall lapse and the

property shall become part of my estate to be divided between the two Fornaseros and Poindexter."

In addition to the will, the Carlis sought to introduce: (a) an "affidavit of residence" signed by James House and notarized in 1970 wherein House states he is "presently leasing" Barrell's land, (b) the deposition testimony of plaintiff Thelma Haskell setting forth the fluctuations in lease payments and describing how Barrell and House prepared a handwritten document which House himself then transferred onto the Wolcott form and (c) deposition testimony of a judge, who notarized the grant deeds from Barrell to George Carli in 1977, which infers Barrell was not at all proficient in the English language.

Following argument, the matter was taken under submission. The court thereafter issued an order granting the adjudication issues, finding there were no triable issues of material fact with respect to the following: "(1) That on or about November 21, 1969, James S. House and Emanuel Barrell entered into a lease-purchase agreement dated November 19, 1969 and which was recorded in the official records of the Recorder of Imperial County on November 28, 1969 at book 1,286, pages 375-376.

"(2) That on or about December 5, 1975, plaintiffs Paul Haskell and Thelma Haskell succeeded to the interest of James House in said land lease-purchase agreement, pursuant to the order settling first and final account and report of Executrix allowing extraordinary compensation and of final distribution in the estate of James Samuel House, case #9089, in the Imperial County Superior Court.

"(3) That all of the payments required under the land lease-purchase agreement have been made.

"(4) That the land lease-purchase agreement was a lease-purchase agreement under which the buyer-lessee or his successor would make the required payments and then have an enforceable right to compel a conveyance of the property."

The Haskells' motion for summary judgment was granted by chambers order on August 7, 1985. In making its ruling, the court relied upon the findings made on the ruling on the adjudication of issues. Judgment was entered for the Haskells on February 13, 1986, compelling the Carlis to convey the disputed property to them. The Carlis' cross-complaint was dismissed.

The Carlis appeal from the judgment on the grounds the ruling on adjudication issues (1) and (4) was incorrect and summary judgment which was based upon that ruling was improper.[1]

A

Initially, we are compelled to note that at the adjudication issue hearing of September 20, 1983, no objection was raised to the Carlis' use of House's affidavit of residence, the deposition testimony of Thelma Haskell or the deposition testimony of the judge. ■ It is well settled by statute and case authority that the failure to object, even to otherwise inadmissible evidence, waives the defect. (Evid. Code, § 353, subd. (a); *Estate of Silverstein* (1984) 159 Cal.App.3d 221, 225 [205 Cal.Rptr. 294]; *People* v. *Harris* (1978) 85 Cal.App.3d 954, 957 [149 Cal.Rptr. 860]; *People* v. *Nugent* (1971) 18 Cal.App.3d 911, 917 [96 Cal.Rptr. 209]; *Waller* v. *Waller* (1970) 3 Cal.App.3d 456, 464 [83 Cal.Rptr. 533]; 3 Witkin, Cal. Evidence (3d ed. 1986) § 2012, pp. 1971-1972.)

Although the use and admissibility of the 1969 will were contested by the Haskells, their objections were not based upon the ground argued on appeal, i.e., that it constituted improper parol evidence. The objections were that (1) it constituted improper evidence of uncommunicated intent under *Houghton* v. *Kerr Glass Mfg. Corp.* (1968) 261 Cal.App.2d 530 [68 Cal.Rptr 43], (2) the will could not be used to alter the sale since there was consideration paid by House (*Estate of Howe* (1948) 31 Cal.2d 395 [189 P.2d 5, 1 A.L.R.2d 1171]) and (3) there was a lack of a foundational declaration from George Carli, who presented the will at his deposition. The failure to raise the specific objection based upon parol evidence waives such argument for purposes of appeal. (Evid. Code, § 353, subd. (a).) Even if the objections raised below could be set within a parol evidence analysis, the record contains no ruling on any of the objections.[2] Failure of counsel to secure such a ruling waives the objection. (*Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 698 [39 Cal.Rptr. 64]; 3 Witkin, Cal. Evidence, *supra,* § 2030, pp. 1992-1993.)

Although the waiver rules did not apply to summary judgment proceedings prior to the 1980 amendment of Code of Civil Procedure, section 437c (see *Dugar* v. *Happy Tiger Records, Inc.* (1974) 41 Cal.App.3d 811, 817 [116

---

[1] The parties agree the Carlis may appeal the court's findings on these issues. (*Barth-Wittmore Ins.* v. *H. R. Murphy Enterprises, Inc.* (1985) 169 Cal.App.3d 124, 136 [214 Cal.Rptr. 894].)

[2] Although evidentiary objections were made based on the parol evidence rule during the motion for reconsideration, the record does not reflect the court ruled on these objections either.

Cal.Rptr. 412]), section 437c, subdivision (b), now provides "[e]videntiary objections not made either in writing or orally at the hearing shall be deemed waived." Section 437c, subdivision (c), further sets forth that the trial court must consider all evidence unless an objection has been raised and sustained: "In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained . . . ."[3]

It is true the adjudication of issues procedure is specifically set forth in Code of Civil Procedure, subdivision (f) of section 437c, while the evidentiary rules governing summary judgment are contained in subdivisions (c) and (b). There is no case which addresses the question whether the evidentiary provisions of subdivisions (b) and (c) apply to motions for summary adjudication of issues under subdivision (f). ■ However, the legislative history of Code of Civil Procedure section 437c compels us to conclude motions for summary adjudication are governed by the language of subdivisions (b) and (c).

### B

Our current summary judgment statute was first implemented in 1973. (Stats. 1973, ch. 366, § 2, p. 807.) In its original form, it was not subdivided and did not provide for the waiver of evidentiary objections currently set forth in subdivision (b). The 1973 enactment did require the court consider all evidence presented by the parties, except evidence to which objections had been made and sustained by the court. The 1973 statute also allowed parties, when moving for summary judgment, to ask in the alternative for a determination that some issues were without substantial controversy. Thus, the early cases speak in terms of "partial summary judgment" procedure. (*Beech Aircraft Corp.* v. *Superior Court* (1976) 61 Cal.App.3d 501, 514-516 [132 Cal.Rptr. 541]; *LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741 [176 Cal.Rptr. 224.)

In 1980 the statute was amended to provide evidentiary objections were waived if not made at or before the time of the hearing on the motion. (Stats. 1980, ch. 57, § 1, p. 151.) The 1980 amendments did not alter the provisions for "partial summary judgment" and left the statute unsubdivided. In the unlettered 1980 statute, application of the new waiver provisions *to motions for partial summary judgment as well as to motions for summary judgment* is unambiguous.

---

[3] In 1980 this language was amended to delete the term "admissible" which had preceded the word "evidence."

In 1982 the subdivision lettering was added, as was subdivision (j), providing for entry of a final judgment. (Stats. 1982, ch. 1510, § 1, p. 5855.) The waiver of evidentiary objections became a part of subdivision (b), the requirement that the court consider all admissible evidence became subdivision (c) and the provision allowing a motion for summary determination of issues became subdivision (f), designating that process as a "summary adjudication of issues" procedure. The latter change was one of terminology rather than substance. It served to correct the widespread judicial use of the term "partial summary judgment," which is a misnomer, inasmuch as no judgment is entered in connection with the procedure. The amendment also expressly permitted parties to do what had always been permitted, i.e., bring a motion for summary adjudication of an issue alone or in conjunction with a motion for summary judgment.

Aside from adding the language in subdivision (j), the 1982 amendments did not alter any of the previous language of the statute. Had the Legislature meant to relieve parties moving for an adjudication of issues (partial summary judgment) from the procedures required for a motion for summary judgment, a far more extensive revision would have occurred. This conclusion is supported by the placement of subsequent procedural additions. For example, in 1983, the 28-day notice requirement for summary judgments was added to subdivision (a). At the same time, the requirement of separate statements was inserted in subdivision (b), as was the requirement that opposition be served and filed 14 days before the hearing. No such time periods were added in subdivision (f), suggesting the Legislature intended the procedural provisions of subdivisions (a), (b), and (c) also govern motions for summary adjudication of issues under subdivision (f).

Finally, prior to establishment of section 437c, subdivision (f), the trial court had the ability in the course of a summary judgment motion to adjudicate issues which were without controversy. (*Beech Aircraft Corp.* v. *Superior Court, supra,* 61 Cal.App.3d 501, 516; *LaRosa* v. *Superior Court, supra,* 122 Cal.App.3d 741, 744-745.) As to issues of law, this is so even after the establishment of the specific summary adjudication procedure in subdivision (f). (*Reid* v. *State Farm Mutual Auto. Ins. Co.* (1985) 173 Cal.App.3d 557, 570-571 [218 Cal.Rptr. 913].) It would, indeed, present an anomaly if the application of the statute's waiver rule existed when an issue was summarily adjudicated in the course of a noticed motion for summary judgment but did not exist where the precise issue was raised by way of a separately noticed motion for summary adjudication of issues.

Applying the evidentiary procedures set forth in Code of Civil Procedure, subdivisions (b) and (c) of section 437c, the trial court had before it parol evidence which the Carlis had introduced in order to explain both the

intention of the parties and the terms used in the November 1969 agreement. The question is whether this evidence precluded the granting of summary adjudication of issues (1) and (4). We believe it clearly did.

## C

■ The summary judgment procedure is drastic and should be used cautiously so that it does not become a substitute for an open, trial, method of determining the facts. (*Arauz* v. *Gerhardt* (1977) 68 Cal.App.3d 937, 940 [137 Cal.Rptr. 619].)

Upon a motion in summary judgment, the controlling question before the trial court is whether there is a material issue of fact to be tried. If the trial court determines there is one, it is powerless to proceed further. The issue must be decided in trial by the finder of fact. (*Brown* v. *Bleiberg* (1982) 32 Cal.3d 426, 436, fn. 7 [186 Cal.Rptr. 228, 651 P.2d 815].)

■ The principles governing the case before us have been specifically addressed by this court in *Loree* v. *Robert F. Driver Co.* (1978) 87 Cal.App.3d 1032, 1039-1040 [151 Cal.Rptr 557].) "When the meaning of the language of a contract is doubtful or uncertain and parol evidence is introduced in aid of its interpretation, 'the question of meaning is one of fact.' *(Walsh* v. *Walsh, supra,* [1941] 18 Cal.2d 439, 441 [116 P.2d 62].) The contract here involves parties not in this lawsuit; yet its language is sufficiently broad, uncertain in its meaning to require an examination into extrinsic circumstances to ascertain the intent of the parties. In such circumstances it is the primary duty of the trial court to construe the language after a full opportunity afforded to all parties in the case to produce evidence of facts, circumstances and conditions surrounding its effect and the conduct of the parties relating thereto. [Citation.] Such duty is not performed, cannot be performed by the summary judgment procedures."

■ If ever a doubtful or uncertain contract existed, this is one—both in form and substance.

Here, the structure of the agreement itself is ambiguous. Its very title designates it as a sale and a lease. The parties could have easily used a sale form or a lease form. They did neither. They created a hybrid of their own susceptible to the interpretation each asserts on this appeal. The agreement calls for House to pay "rent" for an 11-year period. Barrell might well have intended an 11-year lease after which period the land would be transferred to House with the rent payments by him to be considered full payment, i.e., a promise to sell the land in 11 years and use the past rents as the purchase

payments. Likewise, the parties may well have intended only a lease and intention to transfer the property as a gift after 11 years.

On the other hand, the agreement's language may also be interpreted as an outright sale where installment payments were to be made for 11 years and the installment payments couched in terms of a lease.

Equally ambiguous is Barrell's promise to "give" the land to House in 11 years. The term "give" has two meanings, one of which supports each party's argument herein. The word means "to confer the ownership of without receiving a return; make a present of," or alternatively "to execute and deliver." (Webster's Third New Internat. Dict. (1966) p. 959.) Given use of this ambiguous term, coupled with (1) evidence the parties themselves, through a will and residence affidavit, considered the agreement a lease and (2) Barrell's lack of fluency in the English language, it cannot be concluded the terms of the agreement and circumstances surrounding its creation are so clear as to remove the function of interpretation from the trier of fact. Given the ambiguity inherent in the agreement and the circumstances surrounding its creation, adjudication issues (1) and (4) should have been permitted to proceed to trial. The August 7, 1985, order granting summary judgment which adopted the issues as law of the case was thus based upon reasons which we have found to be improper.[4]

Judgment reversed.

Wiener, Acting P. J., and Work, J., concurred.

---

[4] The Carlis raise additional contentions in support of reversing the summary judgment herein. In light of our ruling, they need not be addressed. The granting of adjudication issues (2) and (3) has not been appealed from and hence the court's ruling on those matters remains undisturbed by the decision rendered herein.