Filed 12/11/23  Troutman v. Fager CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| JOSEPH TROUTMAN, | |
| Plaintiff and Respondent, | E079449 |
| v. | (Super.Ct.No. CVSW2201438) |
| CHRISTOPHER FAGER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Albert J. Wojcik, Judge.

Affirmed.

Christopher Fager, in pro. per., for Defendant and Appellant.

Joseph J. Troutman, in pro. per.; for Plaintiff and Respondent.

Christopher Fager appeals from an order granting a civil harassment restraining order against him.  He claims the trial court abused its discretion by not reviewing exhibits he submitted at the hearing, and that the restraining order was improperly issued

1

because the petition did not satisfy all elements of Code of Civil Procedure[1] section 527.6.  We affirm.

## BACKGROUND

To avoid confusion, we refer to the named parties by their surnames.  Defendant and appellant Fager is romantically involved with Rachel F., who was previously married to plaintiff and respondent Troutman.  Rachel has a baby daughter by Fager, and two sons by Troutman, O.T. and D.T., who were ages six and three, respectively, when the incidents giving rise to the action began.

On March 7, 2021, shortly after learning that Fager was romantically involved with Rachel, Troutman communicated with Fager over social media expressing what a "shitty" thing it was Fager and Rachel were doing, and that Troutman's sons did not deserve this.  Thereafter, the two men saw each other when Fager would bring Rachel to Troutman's residence to pick up her sons for visitation.

Fager believed that Troutman was engaged in a "smear campaign" against him and was using his sons in this process.  O.T. informed Fager that they (presumably O.T. and D.T.), were instructed to refer to Fager by a derogatory name.

On September 11, 2021, at Sunridge Park in Chula Vista, O.T. ran up to Fager's vehicle and struck it with his fist with sufficient force to leave a shallow, but visible dent.  Fager denied getting angry with O.T. regarding the incident, testifying that he told O.T.

---

[1]  All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

that he, Fager, would pay for it. However, Troutman testified that Fager picked up O.T. and shook him, telling the child that he was going to pay for it.

On December 1, 2021, O.T. struck Fager as he sat in the driver's seat of Rachel's vehicle. Then, O.T. reportedly "went out the door" and said to his father, "Dad, thanks for letting me do that," which was offensive to Fager.[2] Fager felt he needed to say something to stop the children's abusive behavior. As O.T. approached the Troutman residence after being dropped off following the visit, Troutman heard Fager yell at O.T., in an angry voice, that he better show Fager respect.

Then Fager heard Troutman say something mean to Fager and called out to tell Troutman to check his phone. When Troutman checked his phone, he found a lengthy text message from Fager, described by Fager as "offering peace," which included a photograph of Fager and Rachel at a shooting range,[3] accompanied by a lengthy text

---

[2] The trial court sustained a hearsay objection as to the content of the statement.

[3] The trial court reviewed the text message and accompanying photograph, which had been proffered as exhibits, but returned all exhibits to the offering parties. Although Fager has attempted to lodge with this court numerous documents that were excluded by the trial court, no one has produced an image of the text message that precipitated the application for restraining orders. Nevertheless, we note that Troutman has described the photograph as showing Fager and Rachel at the shooting range with a "bullet riddled target."

There is no refutation of this description, which the court considered in making its decision. Of course, we are not bound by this description, but we note that while Fager has attempted to minimize his conduct, he has not transmitted the exhibits to us for our own examination to support his position that there was nothing threatening depicted. At oral argument, Fager disputed this statement, arguing he had attempted to augment the record with the relevant exhibit. However, our further examination of the augment request demonstrated the photograph and text message sent by him to Troutman was not included.

message. In part, the text message stated, "More importantly, over the years to come, there will be times where I'm all that stands between your sons and their mother and danger. [¶] Do you really think it is wise to fight against the man that will be protecting [O.T.] and [D.T.] when you're not around? It doesn't serve you well, or your boys, or anyone else for you to keep attempting to undermine us. I want to stop hearing that you're speaking disrespectfully about me and their mother immediately." It went on to state, "Rachel decided to no longer be your wife. Moving forward, if you insist on continuing to attack a woman, or child, or me in any way, that's not going to be good for you." "Back off now and move on with your life. Interact with our family respectfully. Stay away from me and my daughter. Do those things, and we can all live in peace."

Troutman considered this message to be a threat and sought civil harassment restraining orders.[4] In March 2022, shortly after the issuance of the temporary restraining orders, which prohibited contact between Fager and Troutman as well as Troutman's sons, Rachel made a video call to her sons to tell them she was about to have Fager's baby. Fager jumped into the call to announce he was going to be a dad, despite the no-contact order that was in place.

On June 2, 2022, a hearing on the matter took place, at which both Troutman and Fager testified. After hearing the testimony and considering the exhibits offered into

---

**4** The original application and order to show cause respecting the restraining orders are not included in the clerk's transcript; however, the register of actions includes references to the filing and the issuance of temporary restraining orders.

evidence, the court issued the restraining orders prohibiting Fager from contacting or coming within 100 yards of Troutman or his sons.

Fager appealed.

## DISCUSSION

On appeal, Fager makes a couple of claims: (1) that the court abused its discretion by not reading his submitted evidence before the hearing; and (2) that Troutman failed to satisfy all the elements of Code of Civil Procedure section 527.6 in that there were no explicit threats, no physical harm, and no pattern of harassment. Because the trial court disagreed with Fager's analysis, we must treat the second point as a claim of insufficient evidence to support the judgment.

A. *No Abuse of Discretion Has Been Established.*

Fager argues that the court abused its discretion by "not reading [his] submitted evidence file" prior to hearing the case.[5] There are two problems with this assertion: First, Fager has cited no legal authority that requires a court to read such information before the hearing in the absence of a request made pursuant to Evidence Code section 402. Second, there was no direct request that the court read the "submitted evidence file" prior to the hearing, so there is no adverse ruling. Failure to secure an adverse ruling waives the objection. (*Haskell v. Carli* (1987) 195 Cal.App.3d 124, 129, citing

---

[5] Fager made a request to augment the appellate record to include this "evidence file," comprising documents that were not offered into or admitted into evidence. On April 3, 2023, we indicated that the request would be considered as a motion to admit new evidence on appeal. We now deny that request because the information attached to the request is irrelevant.

5

*Fibreboard Paper Products Corp. v. East Bay Union of Machinists* (1964) 227
Cal.App.2d 675, 698.)

At the inception of the hearing, defense counsel informed the court there was a
binder, a copy of which had previously been provided to opposing counsel, but there was
no express request that the court read it before hearing testimony.  The court did indicate
it did not need a lot of detail because it had read the petition, as well as that it assumed
the defense would get into the allegations, and went on by saying, "And then if there's
something to, I don't know, ask questions about to get more detail about, or to point out
to me something that—written documents, by all means."

Fager did not proffer any witnesses other than himself and no evidence besides the
text message and photograph, identified as Exhibits 1 and 2, were offered into evidence.
Fager has attempted to augment the record on appeal to include material (which we
assume was the same material in the binder), but none of the material is relevant to the
issues in Troutman's petition because they have no bearing on whether or not Fager made
a threat.  Fager's arguments in the opening brief in which he discusses the binder,
confirm that he sought to introduce the material to cast Troutman as an abusive spouse or
parent.  This was irrelevant.

However, the only issue before the court was whether the facts alleged in
Troutman's petition were true; character evidence was not relevant.  Whether Troutman
was abusive to his ex-wife or sons was not before the court to decide, so the evidence
would have been irrelevant even if it had been proffered into evidence.

Fager does not claim error respecting any other evidentiary rulings, so we find no abuse of discretion.

*B. Substantial Evidence to Support the Issuance of Restraining Orders.*

Fager argues Troutman did not establish all the statutory elements to be entitled to a civil harassment restraining order because there was only one text message with no explicit threat and no prior physical assault, thus demonstrating no pattern of harassment. We disagree.

We review for substantial evidence the trial court's factual findings supporting its decision to grant a restraining order, and we consider de novo whether the facts are sufficient to constitute civil harassment under section 527.6.

A person who has suffered harassment as defined in section 527.6, subdivision (b), may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section. (§ 527.6, subd. (a)(1).) " 'Harassment' is unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).)

As used in section 527.6, a " '[c]redible threat of violence' is a knowing and willful statement *or* course of conduct that would place a reasonable person in fear for the person's safety or the safety of the person's immediate family, and that serves no

7

legitimate purpose." (§ 527.6, subd. (b)(2), italics added; see *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 725.)

The statute requires "clear and convincing evidence that unlawful harassment exists." (Code Civ. Proc., § 527.6, subd. (i).) We review the order granting the injunction under section 527.6 for substantial evidence. (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 497; *Duronslet v. Kamps*, *supra*, 203 Cal.App.4th at p. 725, citing *Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.)

"The appropriate test on appeal is whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record." (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.) "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.) We review the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence" (*Id.* at pp. 1011-1012.)

In the present case, the court reviewed the allegations of the petition and heard the testimony of both Troutman and Fager. While Fager asserts there was only one text message, comprising the statement, "Joe, check your phone," and no "course of conduct," the court was not required to find there was a "course of conduct" where it determined there was a credible threat because the statutory language is in the disjunctive. Where the

8

restraining order is sought due to a credible threat of violence, a person is not required to establish a pattern of conduct, thereby exposing the person to risk of serious harm.

After hearing Fager's testimony about the escalating hostility between himself and Troutman and considering the language of the text message, coupled with the photograph (both of which the court admitted into evidence), the court found the threat to be credible. Considering that Fager's testimony about the content of the text message was contradicted by the evidence in the exhibits, the court's finding—including its credibility assessments—was reasonable. Under the circumstances, the record supports the judgment issuing the restraining order.

### DISPOSITION

The judgment is affirmed. Costs are not awarded in this appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


RAMIREZ
P. J.


We concur:


McKINSTER
J.


CODRINGTON
J.

9